Good morning, Your Honors. May it please the Court, Edith Nazarian, appearing for Burke Law Offices on behalf of the petitioner. Your Honors, the Board made a number of clear errors in this case, the first of which being the fact that it determined that there was no assistance that his previous counsel had made in his case. Particularly, the Court first found that there was no prejudice in finding that there was no sigis that the petitioner could have pursued when he was in his immigration proceedings. His prior counsel should have at that time known that he could have been eligible for sigis because he had come unaccompanied. He was a minor at the time, and he could have been declared a ward of the Court. He was, it is true, given into the care of his grandmother, but sigis specifically says that it's the parents. And there is absolutely, all the information that is in the record suggests that he was abandoned by the parents in this situation. I understand that opposing counsel mentions the motion to change venue, how it includes the fact that he was supposed to be put into his parents' house. However, that was written in pro per, it's unclear who wrote it, and it specifically does state that he was living with his grandmother since entering. So even if, assuming he was put into his parents' house, that doesn't mean necessarily that his parents were with him. So that is the first error of the Board. The second was the appeal. The Quintanilla law firm entered a notice of appeal. However, and also they indicated they checked the box saying that they were going to write a subsequent appellate brief, which they never did. That in and of itself creates a presumption of prejudice in this case. Prejudice is presumed because, as the Ninth Circuit has previously indicated in failure to file a brief is a presumption of prejudice. Counsel, if I could get back to your first point. Sure. As I read the BIA's decision, the BIA did not really address the argument that you're raising now. The idea that maybe he could have qualified for this status, but his lawyer never told him to pursue it, never looked into it. Right. And the BIA or the government in its brief at page 19, and I can tell government counsel I'm going to be asking about that, seems to agree that that specific argument was not addressed by the BIA. If that's correct, what should we do in this case? Are we obligated to send it back to the BIA to address that issue? Or is there something else you're asking this court to do? Well, the BIA should have addressed that point. That's part of the reason why we're saying that the BIA erred in this situation. If they were to, if you were to send it back for that reason, an error was created that has prejudiced petitioner. And granted, he's no longer a minor now. But the truth of the matter is, is he's entitled to due process. And because he's entitled to due process, he shouldn't have, if there is an error, it should be corrected. And that was my next question. So your client now is, I think, almost 30 years old, correct? Yes. So he's no longer a kid, now a man. Right. If we were to send this back to the BIA and they were to look at this issue again, would it be correct? Let's say they found the way you want them to find that, yes, in fact, he could have qualified for the status. Is that still possible to do now that he's 28, 29 years old? The court would still have to figure out when he was 17, whether or not that were possible. And if it were possible, then he would get to remain in the country based on, okay. Now, is there any other way he can remain here? And I, again, this is not squarely presented in this case. I'm just trying to educate myself in this case. He's 29, I think. He's 28, I believe. 28. Okay. And he's been married now for a few years? Since 2012, January 2012. All right. So he's lasted a lot longer than my Brangelina, right? He made it now that he's been married for four years? Absolutely. Absolutely. His wife actually, we, our office has actually submitted an I-130 petition on his behalf. Granted, you know, there is an unlawful entry. However, there are waivers possible for him to apply to, and he can potentially obtain status based on these waivers. So he does have means of relief if this is sent down back to the immigration court or the board because there's, you know, the possibility of a, there is a petition. It's currently pending. It hasn't been approved yet, but it has been submitted. And then also, you know, there's always administrative closure. Now, I had a brief conversation with opposing counsel before I came on this, came before you about, you know, trying to get this case back down in order to try to close the case to agree that they would agree to administratively close or not seek to remove respondent from the country. Those attempts had failed. However, I can tell you that in my experience in immigration court, his case, you know, when it's in front of the immigration court, it's a very good case for prosecutorial discretion. He has no crimes. He has, you know, no issues really. He's a very good person and somebody who works hard and he has a United States citizen grandmother and he has a United States citizen wife. And he has been, I would say he's very qualified if this were to be in immigration court to receive prosecutorial discretion. And if there are no other questions regarding that issue, I'll go on to the next issue that I was discussing, which was the issue of the presumption of prejudice from the failure to file an appellate brief on petitioner's behalf, which as I was saying, what creates a presumption of prejudice because, you know, prior counsel indicated that he would file a brief. He never did. And that I would say severely prejudiced petitioner because he waived issues that could have been, you know, maintained for subsequent review. And let me see, one of the biggest issues is that I know that he indicated prior counsel wrote a list in the notice of appeal, a detailed list. However, you know, there were things that prior counsel indicated in that notice suggesting, yes, he was meaning to file an appeal. He said he reserves issues on the record, the fact that they stipulated to the testimony. He indicated that, you know, he reserves the issue of discussing, you know, a particular social group. So there are very clear indications in this case that counsel intended to file a separate brief and by failing to, that automatically, in my opinion, creates a presumption of prejudice regardless of whether the board summarily dismisses the case or not. So the final point of prejudice is with regard to subsequent counsel, which basically failed to file a motion to reopen for a petitioner once he received the case, he should have known that prior counsel should have filed an appeal, an appellate brief, and he should have also sought to remand the matter, tried to remand the matter for TVPRA because at the time, a petitioner could have potentially still been able to receive that relief. That is the first main issue, which is prejudice. The second issue that the board clearly erred on was with regard to Lozada, and Lozada, its requirements are not sacrosanct. The Ninth Circuit has repeatedly held that. In this situation, I would say that prejudice was clear, the errors of prior counsel were clear, and the requirements of Lozada were met in this case. Another error that I think the board makes is with regard to equitable tolling, and they basically say that by failing to meet Lozada, you automatically are not qualified for equitable tolling, and I don't think that is correct at all to say because equitable tolling and Lozada are two completely distinct legal concepts, and Iturribarria says that equitable tolling is for a case when there is deception, fraud, or error, and it does not mention anything about Lozada, and for that reason, I think the board erred in that regard, and I would say that this case should be remanded for those reasons. Yes, thank you. Good morning. May it please the Court, Alison Freyer for the Attorney General. In this case, the board did not abuse its broad discretion in denying Mr. Flores's untimely motion to reopen for failure to meet the Lozada requirements. While these requirements are not sacrosanct, as opposing counsel mentioned, they do have some important role to play, and it would have been very helpful in this particular case had petitioner complied with Lozada. It might have been helpful, but as Judge Owens said, he likes to get educated on these cases. I wanted to get educated, too. Is it correct that there is no criminal record here that he has American-born children? He has no children, but he has no criminal record. He has a U.S. citizen wife as well as a U.S. citizen grandmother, but no children. All right, and he's been gainfully employed in the United States for how long? It seems since his arrival. Pardon me? It seems, at least in the last few years, that he has been gainfully employed. When did he arrive here? 2005, wasn't it? Yes, 2005. And are there still priorities for prosecutorial efforts in these cases? Yes, and he falls under priority three. What does that mean? It means that given the... How many priorities are there? There are three as well as non-priority, and he falls under priority three, which is a priority but the least important of the priorities. And this case has gone to mediation? Yes, twice. And we didn't get... We didn't get anywhere. Also, last week, I asked my client if they were interested in offering deferred action, and they declined. How high up the list in the department did you go? There's no appeal process when the client says no. I mean, who's the client? That's what I'm trying to find. Oh, sorry, the Department of Homeland Security. And who is that within the Department of Homeland Security? The Enforcement and Removal Operations makes the decisions about deferred action, and they see themselves as a represented party, so we don't speak directly to them. We speak to the Office of the Chief Counsel to connect with ERO. And so I got the answer from a senior attorney, is her title. So I got the answer from a senior attorney within the uh, the declining of deferred action from Enforcement and Removal Operations. I don't know who at ERO said no or reviewed the request. I mean, Ms. Frayer, look, you're doing your job, you're presenting yourself very well, you've got our case, but I want to echo some of Judge Reinhart's questions. This was a puzzler for me as to why we're here in this case. And again, no criticism of you at all. I'll be very clear, you've been very professional. I thought your address a certain issue, I do want to ask you about that. But this was, just to let you know, this was a puzzler for me, why, when there are other cases, like Priorities 1 and 2, why we're here. But if I could ask you about something you did have in your brief at page 19, you did make the acknowledgment correctly that the BIA had not addressed a particular issue about the prejudice argument they're making. With that in mind, how do we get to where you want to go in the case if the BIA did not address the issue that they're raising? How do we get there? Well, any remand on that issue would be futile because there's nothing in the record to support Mr. Flores' claimed eligibility for SIJS. To be eligible for SIJS, he needs a state court order adjudicating him eligible for long-term foster care because he can't be reunited with one or both of his parents as a result of abandonment, abuse, or neglect. He's saying he doesn't have that court order because Mr. Quintanilla never told him to go get it. But there's nothing in the record to suggest that he would have been eligible for such a court order. He indicated in the change of venue motion, which he and his grandmother both signed, that he was going to live with his parents. His father came down to El Salvador, picked him up there, and traveled with him through Central America and Mexico. The father left him at the border, but there's no indication if they ever saw each other again. They may have met up in Texas. We don't know. And that's why compliance with AZADA would have been so helpful. It's entirely possible that the reason Mr. Quintanilla did not seek SIJS is because Mr. Flores' parents both hired Mr. Quintanilla, in which case there'd be no reason to suspect abuse, abandonment, or neglect, and there'd be no reason to seek SIJS. So without any indication in the record, other than statements by counsel, which obviously are not evidence, there's nothing in the record, even the affidavit. The BIA didn't say that. They didn't address it. And maybe that's what would happen. Maybe there'd be somebody more sympathetic in the BIA, and they would not want to continue with this, or they might send it back and have the facts developed, because the facts certainly could have been developed by his lawyer. So there is no record. I assume there's no record, because you say so. But that doesn't mean there must be no record. The BIA could do what you say, but one might hope that it would be a little more enlightened. But if it went back on these facts, there's no way the board could reach a different decision. Well, the board could remand it for more information. First, it would have to reopen the case, and Mr. Flores hasn't shown he's entitled to reopening. Well, we may think that, but again, these are administrative judgments. These are not just questions of law. These are questions of which cases you really want to pursue and which cases don't you, and might even get a lawyer, a different lawyer at the These cases so much depend on who you draw as an immigration judge, who you draw in the BIA, who your lawyer is, that I don't think we can assume that if there's an error and we send it back, that we can assume that the same judgments will be made. In many cases, I think that's true, but here I would disagree. I think we can confidently predict the board's reaction on remand. If this court disagrees, obviously remand would be the appropriate course of action, but there would be no new facts on remand. Until the board reopens the case, it can't go back to an IJ for testimony. Mr. Flores had an opportunity to present an affidavit explaining anything and everything that he thought was relevant to his claims, and he didn't include any allegation that his parents ever abandoned or abused him or neglected him. That was his moment. That was his time when he could have proved his claim. He could have supported his motion to reopen. He was represented by counsel at the time, and he chose not to do so. We don't know why. It doesn't really matter why he didn't do so, and so on this record, there'd be no way for the board to find any eligibility for SAJS. Do you have any authority that would permit us to make that jump? And what I mean by that is not specific to the facts of this case, but the idea that we can say, even though the BIA didn't say what you just said, we can still say that's what would happen so our client loses. I don't have a case that I can file a letter, but this court does use the remand is futile doctrine routinely, so I can file a letter with that. And the gaps in the record are exactly why compliance with Lozada would have been so important to his claims, and if they'd responded, they could have explained why they didn't seek SAJS, perhaps by explaining that the parents were at all the meetings or that they were supporting him, or with any other information, and the gaps in the record could have been filled in with Lozada compliance. The board created Lozada in part so that this wouldn't happen, so that we wouldn't be stuck trying to guess what happened or didn't happen in an attorney's office years ago. We would have more information to evaluate these claims, and so the process exists, and Mr. Flores should have used it. These discussions also demonstrate that the ineffectiveness of prior counsel is not clear on the face of the record. There's nothing in the record about SAJS. Mr. Flores says that demonstrates the ineffectiveness, but it doesn't demonstrate the ineffectiveness if there's nothing to suggest eligibility for that form of relief in the record. Mr. Flores has also never explained how he would get into state court, either at the age of 17 or now, to get the order he needs. The board alone is not empowered to grant SAJS. Mr. Flores needed at the time, and still would need, an order from a California family court with the proper adjudications, and he never said how he would get in the door to state court. He can't simply walk into state court and ask for an order. He needs to be there for a reason. It's usually done as part of divorce proceedings, custody proceedings, child support arrangements, things like that, and he's never explained how he would get in the door of state court to do that. Why does he have to explain it? You know, state court judges are also quite reasonable. If he just went in there and said, I know some state court judges who do domestic relations cases. If he walked in that door and said, you know, are they going to deport me because my I think the one that I know does domestic relations would say sure. But there needs to be a cause of action. File a cause of action. Against whom? For what? Against whom and for what is what Mr. Flores has never identified. You know, I don't know. I'm not that familiar with the state law, but I can't believe. That happens to other, it happens. It's unfortunate, but it happens to other people as well. Mr. Flores, his parents were never married, so they can't seek divorce in state court. They can't seek custody arrangements in state court. It's possible they could have sought some kind of child support arrangement, but Mr. Flores has never explained how that would work. And so without a way to get in. They can't seek a declaration that they should be deemed married? I don't know, but that's the kind of thing. I don't know either. That's why I say I'm not trying to guess. I just think maybe state court judges are a little more creative, flexible, and imaginative, or maybe even more decent than some federal judges. But Mr. Flores would have had to put forth those claims in the motion to reopen. He had his chance to make his case, and he simply didn't. Well, I know that, but I also know that the BIA made an error in that dealing with the issue. So, you know, it's frustrating for everybody. You don't have to use all the time. There are no more questions. I'll yield the rest of my time. Thank you very much. Thank you, counsel. You have your time if you want to use it. I would just like to say that I agree with your honors in the sense that the board did make an error. It is a clear error in this situation by failing to address the argument that it is not the burden of the petitioner to seek sigis. He was a minor at the time. It was counsel's responsibility to review the record and to assess whether or not a petitioner could be eligible for this relief. In his declaration, I understand opposing counsel is indicating that he didn't make his case. However, there is a declaration in the motion to reopen stating that he spoke with Mr. Quintanilla and that the only relief that was the option was asylum that was provided to petitioner. And sigis was not discussed. I'm not sure why that was, but it was clear error for prior counsel to do that in this case when there are facts showing that petitioner could have been eligible for sigis had it been pursued at the time. As I indicated, he was a minor. And that's completely correct. In state court, the state court would be the one that would review the case and determine whether petitioner could have been awarded the court, whether he required a guardian, etc. But that was never pursued. That was never even discussed on the record. So there is a clear error. And the fact that the board is indicating that petitioner is somehow at fault for not obtaining this certificate is completely unfair. And for that reason, it should be remanded. Granted, whether petitioner can pursue that particular form of relief now, that is a question because he is older now. However, there are other forms of relief available to petitioner if it is remanded to the board and the board is to review and agree. That could potentially create an avenue for petitioner to seek another form of relief. He still has an asylum claim that he can pursue. He still has other means of staying in the United States because he does have many equities that a different agency or a different person who reviews his case would agree that he is somebody who should receive some sort of prosecutorial discretion. And I was speaking with prior opposing counsel regarding this case. And we always discuss prosecutorial discretion versus deferred action. He was denied deferred action. He was not denied prosecutorial discretion. So prosecutorial discretion is still an option that he can seek to obtain. And I would say that he should receive it because he does qualify for that given that he has no crimes. He has connections. He has strong connections here through his family, through the community. He's actively involved. He does work and all those reasons. So there is an error in this case and it should not be left unresolved, uncorrected. Thank you. Thank you, counsel. The case is adjourned. You will be submitted.
judges: Reinhardt, Fernandez, Owens